ANDREW L. PACKARD (Bar No. 168690)
MICHAEL P. LYNES (Bar No. 230462)
Law Offices of Andrew L. Packard
319 Pleasant Street
Petaluma, CA  94952
Tel:  (707) 763-7227
Fax:  (707) 763-9229
E mail:  andrew@packardlawoffices.com

MICHAEL R. LOZEAU (Bar No. 142893)
Law Office of Michael R. Lozeau
1516 Oak Street, Suite 216
Alameda, CA 94501
Tel:  (510) 749-9102
Fax:  (510) 749-9103
E mail:  mrlozeau@lozeaulaw.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non profit corporation, <br><br> Plaintiff, <br> vs. <br><br> AUBURN PLACER DISPOSAL SERVICE, INC., a corporation, <br><br> Defendant. | Case No. 2:06-cv-00805-LKK-KJM <br><br> **CONSENT AGREEMENT** <br><br> (Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387) |

**WHEREAS**, Plaintiff California Sportfishing Protection Alliance (hereinafter "CSPA")

is a non profit public benefit corporation dedicated to the preservation, protection, and defense of

the environment, wildlife, and natural resources of California's waters;

**WHEREAS**, Defendant Auburn Placer Disposal Service, Inc. (hereinafter "Defendant" or

"APDS") owns and operates an approximately 5-acre refuse collection, transfer and recycling

facility at 12305 Shale Ridge Road, Auburn, California, WDID identification number

5S31I001657 ("the Facility");

**WHEREAS**, APDS also conducts related operations, pursuant to a lease with the City of

- 1 -

428855.1

PDF created with pdfFactory trial version www.pdffactory.com

Auburn ("City"), and post-closure maintenance activities, pursuant to a contract with the City, at an approximately 40-acre parcel (including the approximately 30-acre closed Auburn Landfill) located adjacent to the eastern boundary of the Facility that is owned by the City and identified by WDID identification number 5S31I016582 (the "Landfill");

**WHEREAS**, CSPA and APDS collectively shall be referred to as the "Parties;"

**WHEREAS**, APDS's operations at the Facility primarily involve collection, storage and transfer of waste materials primarily consisting of household garbage and recyclable materials collected by APDS, and storage and maintenance of equipment, including washing of vehicles and collection containers;

**WHEREAS**, APDS's operations at the Landfill primarily involve closed landfill maintenance, equipment storage, storage of source separated recyclables, and employee parking;

**WHEREAS**, storm water from a portion of the Facility and the Landfill drains to the storm drains operated by the Placer County Department of Water, which discharge into the Auburn Ravine, which is tributary to the Sacramento River, which subsequently drains to the Sacramento–San Joaquin Delta.   A map of the Facility is attached hereto as Exhibit "A" and incorporated herein by reference; two maps of the Landfill are attached hereto as Exhibit "B" and incorporated herein by reference.

**WHEREAS**, storm water discharges associated with industrial activity are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES"), General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 91 13 DWQ (as amended by Water Quality Order 92 12 DWQ and 97 03 DWQ), issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342 (hereinafter "General Permit");

**WHEREAS**, on January 17, 2006, CSPA provided notice of alleged violations of the General Permit by APDS and CSPA's intention to file suit against APDS (the "Notice") to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region IX; the Executive Director of the State Water Resources Control Board ("State Board"); the Executive Officer of the Regional Water Quality Control Board, Central Valley

PDF created with pdfFactory trial version www.pdffactory.com

Region ("Regional Board"); and to APDS, pursuant to Section 505 of the Federal Water Pollution Control Act ("Act"), 33 U.S.C. § 1365;

**WHEREAS**, APDS denies the occurrence of the violations alleged in the Notices and maintains that it has implemented an extensive set of structural and non-structural Best Management Practices ("BMPs") at the Facility and the Landfill since first obtaining coverage under the General Permit in 1997 and has complied at all times with the provisions of the General Permit;

**WHEREAS**, CSPA filed a complaint ("Complaint") against APDS in the United States District Court, Eastern District of California on April 13, 2006, thereby initiating this lawsuit, Case No. 2:06-cv-00805-LKK-KJM ("the Action");

**WHEREAS**, for purposes of this Consent Agreement, the Parties stipulate that venue is proper in this Court, and that APDS does not contest the exercise of jurisdiction by this Court to enter this Consent Agreement;

**WHEREAS**, this Consent Agreement shall be submitted to the United States Department of Justice for the 45 day statutory review period, pursuant to 33 U.S.C. § 1365(c); and shall thereafter be submitted for approval by the Court, the date of which approval shall be referred to herein as the "Court Approval Date;"

**WHEREAS**, at the time the Consent Agreement is submitted for approval to the United States District Court, CSPA shall request a dismissal of the Complaint with prejudice and the Parties shall stipulate and request that the Court retain jurisdiction for the enforcement of this Agreement as provided herein;

**WHEREAS**, this Consent Agreement contains a dispute resolution mechanism that will allow the Parties to resolve most or all disputes that may arise under the Consent Agreement ("Dispute Resolution") without consuming the time or resources of the Court;

**AND WHEREAS**, the Parties agree that it is in their mutual interest to resolve this matter without further litigation.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING**

- 3 -

428855.1

PDF created with pdfFactory trial version www.pdffactory.com

**PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:**

**I.      COMMITMENT OF APDS**

1.      **Implementation of Compliance Measures**.  APDS shall continue to implement the BMPs specified in its current Storm Water Pollution Prevention Plan ("SWPPP") for the Facility ("Facility SWPPP") and its current SWPPP for the Landfill ("Landfill SWPPP"), as well as the additional measures specified in this Consent Agreement.

2.      **Immediate Improvements to Best Management Practices At The Facility and Landfill; Required Documentation**.  Within 60 days of the Court Approval Date, and in any case before **October 1, 2006**, to the extent not already implemented, APDS shall undertake the following obligations with respect to its Facility SWPPP and Landfill SWPPP, as specified below:

(a)      amend its Facility SWPPP and Landfill SWPPP to eliminate all storm water collection and discharge points not shown on the Facility maps attached hereto as Exhibits A and B, respectively;

(b)      amend its Facility SWPPP to include the revised Facility map attached hereto as Exhibit A, and amend its Landfill SWPPP to include the two Landfill maps attached hereto as Exhibit B;

(c)      amend its Facility SWPPP and Landfill SWPPP to eliminate all unauthorized non-storm-water discharges, including vehicle wash discharges, to the extent such discharges are occurring;

(d)      amend its Facility SWPPP and Landfill SWPPP to include the inspection of all storm water collection and discharge points for storm water that may discharge from the Facility or Landfill (weekly during the Wet Season and during qualifying storm events that may reasonably be expected to result in discharge from the Facility or Landfill during operating hours) to ensure that they are functioning properly and to record the results of such inspections in the applicable inspection logs (see below);

(e)      amend its Facility SWPPP and Landfill SWPPP to require the development of a storm event log reflecting all dates on which storm events occurring after the Court Approval Date, including the date, weather conditions, estimated duration of discharge (if any) and visual observations including, but not limited to, the presence of turbidity, sheens, floating materials or discoloration in the discharge;

(f)      amend its Facility SWPPP to include a maintenance schedule (including a comprehensive Facility sweeping schedule and log, employee training materials, and inspection schedule and logs);

(g)      amend its Facility SWPPP and Landfill SWPPP to include a requirement that

[PROPOSED] CONSENT AGREEMENT

428855.1

PDF created with pdfFactory trial version www.pdffactory.com

APDS contemporaneously maintain appropriate logs of all cleaning, sweeping, maintenance and inspection activities at the Facility and Landfill pertaining to storm water BMPs, including the date, time and the person conducting such activities; and,

(h)     amend its Facility SWPPP and Landfill SWPPP to include annual employee training regarding storm water management and emergency response measures to address clean-up of spills and accumulated pollutants.

3.     **Best Management Practices: Improvements & Maintenance**.  In order to further reduce or prevent storm water discharges from the Facility and Landfill, to the extent not already implemented, APDS shall implement appropriate structural and non structural BMPs as described more fully below.  During the term of this Consent Agreement, APDS shall maintain all structural BMPs at the site in good operating condition during the period October 1 through May 31 of each year (the "Wet Season") and as otherwise required to conform to the General Permit and the Facility SWPPP and Landfill SWPPP, as modified by the obligations herein.

4.     **Additional Best Management Practices: Phase I Implementation**.  The following BMPs ("Phase I BMPs") shall be implemented on or before **October 15, 2006**, unless otherwise indicated:

(a)     **Pavement Repair.**  At the earliest date feasible, and in any event no later than February 1, 2007, (i) all areas of the Facility where vehicular traffic or other industrial operations take place shall be paved or repaved, and (ii) all surface cracks in those areas shall be sealed or resealed.

(b)     **Sweeping.**  All areas of the Facility where vehicular traffic or other industrial operations take place shall be swept with a regenerative sweeper (TYMCO Model 600 or better) twice weekly during the Wet Season, once weekly between June 1 and September 30 of each year (the "Dry Season").

(c)     **Storm Drain Maintenance.**  Maintain all storm drains and drop inlets at Facility and the Landfill in good repair, inspecting drains and inlet filter bags and removing sediments affecting the performance of the drains/filter bags every other week during the Wet Season and annually in September of each calendar year.

(d)     **Filtration.**  Install and maintain filters at all drop inlets and drains at the Facility.  Replace straw bales with straw wattles weighted down with sandbags or concrete core straw wattles ("weighted wattles").

(e)     **Green Waste Area.**  Sweep daily during the Wet Season all drain inlet areas at Facility where green waste materials are stored or processed.

(f)     **Specific Area Maintenance: Southern Property Border.**  Maintain all drainage ditches on the Facility's southern border, including the grassy trench,

- 5 -

428855.1

PDF created with pdfFactory trial version www.pdffactory.com

in good repair and clear of all debris, to the extent that such ditches and trench are located on Facility property.

(g) **Specific Area Maintenance: Appliance Recycling/White Goods Area West of Green Waste Area.** During the period from June 1 through September 30 each year, cover drop inlet under metals pile with removable plate except when drainage is necessary to prevent pooling of water in vicinity of inlet and nearby retaining wall. During the Wet Season, and at all other times when plate is not covering inlet, install and maintain inlet filter bag.

(h) **Vehicle Maintenance and Fueling Areas.** Develop and implement daily housekeeping regimen applicable to the vehicle maintenance and fueling areas of Facility represented on Exhibit A.

(i) **Drip Pans and Drip Cloths.** Install drip pans under all backup (not in routine use) and inoperable equipment at the Facility containing oil and/or fuel.

(j) **Coverage For Selected Machinery/Parts/Fueling Areas.** Cover hydraulic pistons, oil and portable fuel containers, and related parts stored at the Facility to minimize exposure to storm water.

(k) **Run-off From Fueling Areas; Run-on To Facility.** Evaluate run-off from all fueling areas and all points where run-on to Facility occurs; construct berms or linear drainage gates where necessary for all fueling areas and eliminate all points where run-on to Facility occurs.

(l) **Emergency Spill Clean-up.** Revise Facility SWPPP to include implementation of a plan for emergency response to spills and accumulation of debris.

(m) **Filtration Media & Maintenance.** Clean out Facility's existing storm water interceptor (10,000 gallon NID OWS) annually in the month of September; inspect and log monthly during the Wet Season.

(n) **Discharge Points.** Maintain discharge points per Paragraph 2(d), above; eliminate all discharge points not shown on Exhibits A and B.

(o) **Bin Storage and Parking Lot Areas on Landfill.** At the earliest date feasible, and in any event no later than November 15, 2006, APDS shall, to reduce or eliminate channeling and erosion of sediment to the greatest extent feasible: (i) pave, gravel, or (if already graveled) re-gravel eroded areas of the Landfill where vehicular traffic occurs, including all entrances, exits and any other areas of the Landfill where erosion is evident, except for refuse-filled areas of the Landfill where modifications to final cover are subject to regulatory oversight and approval; (ii) install rice or straw wattles in and perpendicular to the drainage channel immediately east of the Facility Scales and west of the employee parking lot, shown on Exhibit B; (iii) install rice or straw wattles across the flow path of storm water runoff at the western boundary of the employee parking area south of the parking area gate. All installed wattles shall be keyed into the ground surface several inches, secured to the ground to prevent underflow and channeling beneath the wattles, and shall be replaced at the beginning of each Wet Season and as needed during the Wet Season.

5. **Additional Best Management Practices: Phase II Implementation.** The

- 6 -

428855.1

PDF created with pdfFactory trial version www.pdffactory.com

effectiveness of the Facility's and Landfill's BMPs shall be measured by comparing the results of Facility and Landfill storm water discharge samples, collected and analyzed in accordance with this Consent Agreement ("Sample(s)") with the Evaluation Levels set forth in Exhibit C to this Consent Agreement.  An "Action Plan Event" occurs when, during either the 2006-2007 Wet Season or the 2007-2008 Wet Season (but not the 2008-2009 Wet Season), either (a) the average value of any two consecutive Samples for any parameter listed on Exhibit C exceeds the Evaluation Level for such parameter(s) listed on Exhibit C; or (b) APDS fails to meet the sampling obligations set forth herein.  When an "Action Plan Event" occurs, APDS shall comply with the Action Plan requirements set forth below on or before the first June 30 following the Action Plan Event.

6.      **Sampling Frequency**.  Except as otherwise provided below, during each of the 2006-2007, 2007-2008 and 2008-2009 Wet Seasons, APDS shall collect four (4) Samples from each Facility Discharge Point and each Landfill Discharge Point during storm events that meet each of the following criteria (hereafter, "Qualifying Storm Events"):  (i) the Samples are preceded by at least three (3) working days during which no storm water discharges from the Facility (or Landfill, as applicable) have occurred; (ii) the Samples are collected within the first hour that flow is observed by APDS at the Discharge Point being sampled; and (iii) the Samples are collected during daylight operating hours.  If fewer than four Qualifying Storm Events occur during any Wet Season, APDS shall be obligated to take Samples only during the Qualifying Storm Events that do occur.

7.      **Sampling Parameters**.  All Samples shall be analyzed for each of the constituents listed in Exhibit C.  However, if the concentration of a particular constituent in three consecutive Samples from a single Facility or Landfill Discharge Point is below the Reporting Limit for that constituent listed in Exhibit C (except Oil & Grease, TSS, pH, Specific Conductance and any industry-specific sampling parameters specified in the General Permit as applied to the Facility and the Landfill respectively), APDS is not required to take additional Samples for that constituent at that specific Facility or Landfill Discharge Point during the duration of this

[PROPOSED] CONSENT AGREEMENT

428855.1

PDF created with pdfFactory trial version www.pdffactory.com

Consent Agreement.

8.    **Sampling Laboratory Requirements**.  All Samples collected pursuant to this Consent Agreement shall be analyzed by a laboratory accredited by the State of California.  All Samples shall be delivered to the laboratory as soon as possible to ensure that Sample "hold time" is not exceeded.  APDS shall request that the laboratory provide a Sample analysis report to APDS within fifteen (15) working days of laboratory receipt of the Sample.  Analytical methods used by the laboratory shall be adequate to detect the individual constituents at or below the Reporting Limits specified on Exhibit B.  The Sample analysis report shall be provided to CSPA within seven (7) days of APDS' receipt of the laboratory report from each sampling event pursuant to the Notice provisions below.

9.    **Action Plan; Phase II BMPs**.  Upon the occurrence of an Action Plan Event, APDS shall prepare a written statement discussing the Action Plan Event, the location of the Action Plan Event (Facility or Landfill), the possible cause and/or source of the Action Plan Event, revisions to existing or additional non-structural and structural BMPs proposed to be implemented to prevent the reoccurrence of the Action Plan Event, and a reasonable schedule to implement the proposed measures (collectively, the "Action Plan").  The Action Plan shall be provided to CSPA upon completion, but in no event later than the first June 30 following the Action Plan Event.  To comply with this Consent Agreement, the Action Plan shall (i) be signed by an officer of APDS and (ii) confirm APDS' agreement, pursuant to this Consent Agreement, to implement prior to the next October 1 the Phase II BMPs specified for the Wet Season at issue below, with respect to each parameter which resulted in the Action Plan Event:

| Parameter Triggering Action Plan Event | Phase II BMPs |
| --- | --- |
| <u>Any of the following</u>:<br><br>Specific Conductivity<br><br>Aluminum<br><br>Cadmium | **A.  For Action Plan Events in 2006-07 Wet Season:**<br><br>(1)  Inspect and evaluate all paved areas at Facility, and repair or seal all cracks and crevices;<br><br>(2)  Implement additional sweeping of all |

- 8 -

428855.1

PDF created with pdfFactory trial version www.pdffactory.com

| | |
|---|---|
| Copper<br><br>Iron<br><br>Lead<br><br>Mercury<br><br>Zinc | Facility areas with concentrated pollutant accumulation with sweeper (TYMCO Model 600 or better); and<br><br>(3)  Inspect and log condition of BMPs at location(s) of Action Plan Event (Facility and/or Landfill) monthly during Wet Season.<br><br>**B.  For Action Plan Events in 2007-08 Wet Season:**<br><br>(1)  Implement all Phase II BMPs specified in Part A, above, for these constituents, to the extent not already implemented (because no Action Plan Event occurred in 2006-07 Wet Season);<br><br>(2)  Install compost or zeolite filtration media at all Facility discharge points with exceedances for these constituents;<br><br>(3)  Inspect and log condition of BMPs at location(s) of Action Plan Event (Facility and/or Landfill), including filtration media specified at B(2) above, twice monthly during Wet Season; and<br><br>(4)  Increase regenerative sweeper use at Facility to daily sweeping during Wet Season. |
| Chemical Oxygen Demand | **A.  For Action Plan Events in 2006-07 Wet Season:**<br><br>Install and maintain berms to protect drop inlets from direct flow of waste materials in all areas where green waste materials are stored or processed.<br><br>**B.  For Action Plan Events in 2007-08 Wet Season:**<br><br>Implement Phase II BMP specified in Part A, above, for this constituent, to the extent not already implemented (because no Action Plan Event occurred in 2006-07 Wet Season). |

[PROPOSED] CONSENT AGREEMENT

428855.1

PDF created with pdfFactory trial version www.pdffactory.com

| Oil & Grease | **A.  For Action Plan Events in 2006-07 Wet Season:**<br><br>(1)  Inspect and evaluate all paved areas at Facility, and repair or seal all cracks and crevices;<br><br>(2)  Implement additional sweeping of all Facility areas with concentrated pollutant accumulation with sweeper (TYMCO Model 600 or better); and<br><br>(3)  Inspect and log condition of Facility BMPs monthly during Wet Season.<br><br>**B.  For Action Plan Events in 2007-08 Wet Season:**<br><br>(1)  Implement all Phase II BMPs specified in Part A, above, for this constituent, to the extent not already implemented (because no Action Plan Event occurred in 2006-07 Wet Season);<br><br>(2)  Conduct all vehicle maintenance activities in existing covered areas, or under newly constructed cover; and<br><br>(3)  Cover fueling areas. |
| pH | **A.  For Action Plan Events in 2006-07 Wet Season:**<br><br>(1)  Conduct evaluation to identify materials at location(s) of Action Plan Event (Facility and/or Landfill) likely contributing to exceedance(s), prepare report summarizing evaluation, and store/segregate such materials so as to minimize contact with storm water; and<br><br>(2)  Inspect and log condition of BMPs at location(s) of Action Plan Event (Facility and/or Landfill) monthly during Wet Season.<br><br>**B.  For Action Plan Events in 2007-08 Wet Season:**<br><br>(1)  Implement all Phase II BMPs specified in Part A, above, for this constituent, to the |

- 10 -

[PROPOSED] CONSENT AGREEMENT

PDF created with pdfFactory trial version www.pdffactory.com

| | |
|---|---|
| | extent not already implemented (because no Action Plan Event occurred in 2006-07 Wet Season); and<br><br>(2)  Implement additional sweeping of all Facility areas with concentrated pollutant accumulation with sweeper (TYMCO Model 600 or better. |
| Total Suspended Solids | **A.  For Action Plan Events in 2006-07 Wet Season:**<br><br>(1)  Inspect drains and inlet filter bags and remove sediments affecting the performance of the drains/filter bags every week during the Wet Season;<br><br>(2)  Implement additional sweeping of all Facility areas with concentrated pollutant accumulation with sweeper (TYMCO Model 600 or better); and<br><br>(3)  Inspect and log condition of BMPs at location(s) of Action Plan Event (Facility and/or Landfill) monthly during Wet Season.<br><br>**B.  For Action Plan Events in 2007-08 Wet Season:**<br><br>(1)  Install compost or zeolite filtration media at all Facility discharge points with exceedances for these constituents; and<br><br>(2)  Increase regenerative sweeper use at Facility to daily sweeping during Wet Season. |

The Action Plan may also consider additional BMPs, such as further material improvements to the storm water collection and discharge systems at the Facility and Landfill, changing the frequency of facility sweeping, changing the type and extent of storm water filtration media, or modifying other industrial activities or storm water management practices at the Facility and Landfill.

10. **CSPA Review Of Action Plan; Meet-and-Confer; Invocation of Dispute**

- 11 -

428855.1

PDF created with pdfFactory trial version www.pdffactory.com

**Resolution**.  If CSPA believes that the Action Plan fails to comply with the requirements of this Agreement CSPA may provide APDS with specific requested language changes (in the form of a red-lined version of the Action Plan) together with the underlying rationale (collectively, the "Request").  If APDS believes the Request is (a) legally inaccurate, because the Action Plan does comply with the requirements of this Agreement, APDS shall have thirty (30) days from receipt to provide CSPA with specific language changes (again, in the form of a red-lined version of the original Action Plan) together with the underlying rationale (collectively, the "Response").  If APDS does not provide CSPA with a timely Response, APDS shall be deemed to have waived any right to claim the red-lined Action Plan in the Request was an inappropriate response to the triggering Action Plan Event(s).  The Parties may thereafter continue to exchange Requests and Responses in the same fashion and with the same deadlines.  At any time after an Action Plan Event (and before implementation of the ensuing Action Plan), upon the request of either Party, the Parties shall meet and confer in good faith once with respect to that Action Plan Event.  The Parties may meet and confer further if each Party, in its sole discretion, so chooses.  At any time after the first Response, either Party may invoke Dispute Resolution as provided below.  Notwithstanding anything else in this Consent Agreement to the contrary, implementation of an Action Plan shall be deemed timely if it is implemented within 60 days of becoming final, whether via Dispute Resolution as provided below or via the process described in this paragraph.

11.    **Inspections During The Term Of This Agreement**.  In addition to any site inspections conducted as part of the meet-and-confer process concerning an Action Plan as set forth above, APDS shall permit representatives of CSPA to perform up to three (3) physical inspections of the Facility and Landfill (which may include sampling, photographing, and/or videotaping) during the term of this Consent Agreement.  CSPA shall provide at least forty eight (48) hours advance notice of such physical inspection, except that APDS shall have the right to deny access if circumstances would make the inspection unduly burdensome and pose significant interference with business operations.  In such case, APDS shall specify at least three (3) dates within the two (2) weeks thereafter upon which a physical inspection by CSPA may proceed.  All

[PROPOSED] CONSENT AGREEMENT

428855.1

PDF created with pdfFactory trial version www.pdffactory.com

such inspections shall occur during normal business hours.  APDS shall not make any alterations to Facility or Landfill conditions during the period between receiving CSPA's notice and the start of CSPA's inspection that APDS would not otherwise have made but for receiving notice of CSPA's request to conduct a physical inspection of the Facility and Landfill.  Nothing herein shall be construed to prevent APDS from continuing to implement any BMPs identified in its SWPPP during the period prior to an inspection by CSPA.

12. **APDS' Communications with Regional And State Boards**.  During the term of this Consent Agreement, APDS shall provide CSPA with copies of (a) all documents submitted to the Regional Board or the State Board concerning storm water discharges from the Facility, including but not limited to all documents and reports submitted to the Regional Board and/or State Board as required by the General Permit, and (b) all documents and reports concerning storm water discharges from the Landfill submitted to the Regional Board and/or State Board as required by the General Permit.  Such documents and reports shall be provided to CSPA pursuant to the Notice provisions herein and contemporaneously with APDS' submission to such agency.

13. **SWPPP Amendments**.  APDS shall provide CSPA with a copy of any amendments to the Facility SWPPP or Landfill SWPPP made during the term of the Consent Agreement within fourteen (14) days of such amendment.

## II.   MITIGATION; COMPLIANCE MONITORING; FEES AND COSTS

14. As mitigation of the violations alleged in CSPA's Complaint, APDS agrees to pay the sum of $50,000 within seven (7) days after the Court Approval Date to the Rose Foundation For Communities And The Environment for projects relating to the reduction, prevention or mitigation of, or research on, the effects of discharges of pollutants in storm water to the Sacramento River and the Sacramento San Joaquin River Delta.

15. APDS agrees to reimburse CSPA in the amount of $40,000 to defray CSPA's reasonable investigative, expert, consultant and attorneys' fees and costs, and all other costs incurred as a result of investigating the activities at the Facility and Landfill, preparing the Notices, and negotiating a resolution of this action in the public interest.  Such payment shall be

- 13 -

428855.1

PDF created with pdfFactory trial version www.pdffactory.com

made to the Law Offices of Andrew L. Packard Attorney Client Trust Account within seven (7) days after the Court Approval Date.

16.     APDS agrees to remit $4,000 for each of the three years covered by this Consent Agreement to a compliance monitoring fund maintained by CSPA to defray CSPA's reasonable investigative, expert, consultant and attorneys' fees and costs associated with monitoring APDS' compliance with this Consent Agreement.  Compliance monitoring activities may include but shall not be limited to, site inspections, review of water quality sampling reports, review of annual reports, discussions with representatives of APDS concerning the documents referenced above, and potential changes to compliance requirements herein, preparation for and participation in meet-and-confer sessions and mediation, water quality sampling, and compliance related activities.  The first of these three payments shall be made payable to the Law Offices of Andrew L. Packard Attorney Client Trust Account within seven (7) days of the Court Approval Date and no later than annually thereafter on June 1, 2007 and June 1, 2008.

**III.     DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT AGREEMENT**

17.     **Invoking Dispute Resolution**.  If either Party wishes to invoke Dispute Resolution or otherwise wishes to enforce this Consent Agreement, that Party (the "Invoking Party") shall so notify the other Party (the "Other Party") in writing.  The Parties shall then meet and confer in good faith within seven (7) days of such notification to determine whether a violation has occurred and, if so, whether the Parties can develop a mutually agreed upon plan, including implementation dates, to resolve the dispute.  If the Parties fail to meet and confer in a timely fashion, or if the meet-and-confer does not fully resolve the issue, after at least seven days have passed after the meet-and-confer occurred or should have occurred, the Invoking Party may request a settlement conference before the Magistrate Judge assigned to this matter.  If the settlement conference is not successful in resolving the dispute, or the Magistrate Judge declines to order a settlement conference or other proceeding to resolve the issue, either Party may file a motion in this Court for an Order compelling the other Party to comply with this Consent Agreement.  In the event of such a motion, if neither Party is found to be in bad faith, then fees

428855.1

PDF created with pdfFactory trial version www.pdffactory.com

1 and costs shall be awarded – or not – pursuant to Section 505(d) of the Clean Water Act, 33

2 U.S.C. §1365(d), and applicable case law interpreting this statute.  If either Party is found to be in

3 bad faith (either in breaching this Consent Agreement or in bringing the motion), then the Court

4 shall have the authority to order that Party to pay monetary sanctions and/or mitigation funding in

5 an appropriate amount.

6       18.    **CSPA Waiver and Release of APDS and City of Auburn**.  As of the Court

7 Approval Date of this Consent Agreement, CSPA on its own behalf and on behalf of its

8 members, officers, directors, attorneys, agents, servants, stockholders, employees,

9 representatives, affiliates, subsidiary and parent corporations, partners, assigns and successors

10 hereby fully releases and forever discharges APDS and the City of Auburn and their officers,

11 directors, attorneys, agents, servants, stockholders, employees, representatives, affiliates,

12 subsidiary and parent corporations, partners, assigns and successors from any and all rights,

13 claims and actions related to or arising out of the causes of action and alleged violations of law

14 asserted in this Action, as well as any and all claims and causes of action arising under the Clean

15 Water Act relating to storm water that could have been asserted in the Action, based on the

16 Notice and/or the conduct of APDS and/or the City of Auburn at the Facility and/or the Landfill,

17 at any time through the Termination Date.  This release shall survive the termination of this

18 Consent Agreement.

19       19.    **APDS Waiver and Release of CSPA**.  As of the Court Approval Date of this

20 Consent Agreement, APDS on its own behalf and on behalf of its officers, directors, agents,

21 servants, stockholders, employees, representatives, affiliates, subsidiary and parent corporations,

22 partners, assigns and successors hereby fully release and forever discharges CSPA and its

23 members, officers, directors, attorneys, agents, servants, stockholders, employees,

24 representatives, affiliates, subsidiary and parent corporations, partners, assigns and successors

25 from any and all rights, claims and actions related to or arising out of the causes of action and

26 alleged violations of law asserted in this Action.  This release shall survive the termination of this

27 Consent Agreement.

28

428855.1

PDF created with pdfFactory trial version www.pdffactory.com

20.     Within seven (7) days of the Court Approval Date, the Parties shall file with the Court a Stipulation and Order that shall provide that:

a.      the Complaint and all claims therein shall be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2); and

b.      the Court shall retain and have jurisdiction over the Parties with respect to disputes arising under this Consent Agreement.

21.     The Parties enter into this Consent Agreement for the purpose of avoiding prolonged and costly litigation.  Nothing in this Consent Agreement shall be construed as, and APDS expressly does not intend to imply, an admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Agreement constitute or be construed as an admission by APDS of any fact, finding, conclusion, issue of law, or violation of law. However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Agreement.

22.     The Consent Agreement shall terminate on July 15, 2009 ("Termination Date").

23.     The Consent Agreement may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

24.     In the event that any of the provisions of this Consent Agreement is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

25.     The language in all parts of this Consent Agreement, unless otherwise stated, shall be construed according to its plain and ordinary meaning.

26.     The undersigned are authorized to execute this Consent Agreement on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Agreement.

27.     All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Agreement are contained herein.

[PROPOSED] CONSENT AGREEMENT

428855.1

PDF created with pdfFactory trial version www.pdffactory.com

28.   **Notices**.  Any notices or documents required or provided for by this Consent Agreement or related thereto that are to be provided to CSPA pursuant to this Consent Agreement shall be hand delivered or sent by U.S. Mail, postage prepaid, and addressed as follows or, in the alternative, shall be sent by electronic mail transmission to the email addresses listed below or by confirmed facsimile:

> Bill Jennings, Executive Director
> California Sportfishing Protection Alliance
> 3536 Rainier Avenue
> Stockton, CA 95204
> E-mail: DeltaKeep@aol.com
> Fax:  209-464-1028
>
> **With copies sent to:**
> Andrew L. Packard
> Law Offices of Andrew L. Packard
> 319 Pleasant Street
> Petaluma, CA  94952
> E-mail: Andrew@packardlawoffices.com
> Fax: (707) 763-9227
>
> **And to:**
> Michael R. Lozeau
> Law Office of Michael R. Lozeau
> 1516 Oak Street, Suite 216
> Alameda, CA 94501
> E mail:  mrlozeau@lozeaulaw.com
> Fax:  (510) 749-9103

Any notices or documents required or provided for by this Consent Agreement or related thereto that are to be provided to APDS pursuant to this Consent Agreement shall be sent by U.S. Mail, postage prepaid, and addressed as follows or, in the alternative, shall be sent by electronic mail transmission to the email addresses listed below or by confirmed facsimile:

> John Rowe
> General Manager
> Auburn Placer Disposal Service
> 12305 Shale Ridge Road
> P.O. Box 6566
> Auburn, CA 95604
> E-mail: jrowe@auburnplacer.com
> Fax: (530) 885-1922
>
> **With copies sent to:**
> Brian S. Haughton, Esq.
> Barg Coffin Lewis & Trapp LLP

- 17 -

428855.1

PDF created with pdfFactory trial version www.pdffactory.com

One Market, Steuart Tower, Suite 2700
San Francisco, CA 94105-1475
E-mail: bsh@bcltlaw.com
Fax: (415) 228-5450

Each party shall promptly notify the other of any change in the above listed contact information.

29.     Signatures of the Parties transmitted by facsimile shall be deemed binding.

30.     No Party will be in default or breach of any obligation specified in this Consent Agreement when a failure to perform is due to a force majeure.  For the purposes of this Consent Agreement, a force majeure is defined as any event arising from causes beyond the control of a Party, or its contractors, subcontractors, or consultants, which delays or prevents performance, including, without limitation, acts of God, acts of war or war-like operations, acts of terrorism, acts of public enemies, riot, insurrection, fire, earthquake, flood, explosion, restraint by court order, restraint by public authority, delay by any governmental agency in issuing any necessary permit or approval, or other cause beyond the Party's reasonable control.  Normal inclement weather, economic hardship, and increased costs shall not constitute a force majeure.  In the event of a force majeure, the time for performance of the activity delayed by the force majeure shall be extended for the time reasonably necessary to allow completion of the delayed activity. In the case of delay by any governmental agency in issuing any necessary permit or approval, the extension of time shall be equal to the number of days from the Party's application for the permit or approval until the governmental agency's issuance thereof.  If a Party seeks to rely on this paragraph, it shall bear the burden to show a force majeure that it could not reasonably have been expected to avoid or overcome by the exercise of reasonable diligence.

31.     If for any reason the Court should decline to approve this Consent Agreement in the form presented, the Parties shall use their best efforts to work together to modify the Consent Agreement within thirty (30) days so that it is acceptable to the Court.  If the Parties are unable to modify this Consent Agreement in a mutually acceptable manner, this Consent Agreement shall become null and void.

32.     The settling Parties hereto enter into this Consent Agreement, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

- 18 -

428855.1

PDF created with pdfFactory trial version www.pdffactory.com

Dated:  September 12, 2006_____   California Sportfishing Protection Alliance

By:     ____/s/ Bill Jennings_____
        Bill Jennings, Executive Director

Dated:  September 19, 2006_____   Auburn Placer Disposal Service, Inc.

By:     _____/s/ John Rowe_____
        John Rowe, General Manager

**ORDER**

APPROVED AND SO ORDERED, this _28th__ day of __November _, 2006.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

- 19 -

428855.1

PDF created with pdfFactory trial version www.pdffactory.com

**EXHIBIT A**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[PROPOSED] CONSENT AGREEMENT

428855.1

PDF created with pdfFactory trial version www.pdffactory.com

**EXHIBIT B**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[PROPOSED] CONSENT AGREEMENT

428855.1

PDF created with pdfFactory trial version www.pdffactory.com

**EXHIBIT C**

| Parameter | Evaluation Level | Reporting Limit |
|---|---|---|
| Aluminum | 0.75 mg/l | 0.50 mg/L |
| Cadmium | 0.0159 mg/L | 0.01 mg/L |
| Zinc | 0.117 mg/l | 0.05 mg/L |
| Copper | 0.0636 mg/l | 0.02 mg/L |
| Iron | 1.0 mg/l | 0.3 mg/L |
| Lead | 0.0816 mg/L | 0.05 mg/L |
| Mercury | 0.0024 mg/L | 0.0002 mg/L |
| Oil & Grease | 15 mg/L | 5 mg/L |
| pH | 6.5 – 8.5 pH units | 1.00 pH units |
| Specific Conductivity | 200 µmho/cm | 10 µmho/cm |
| Total Suspended Solids | 100 mg/L | 10 mg/L |
| Chemical Oxygen Demand | 120 mg/L | 20 mg/L |

[PROPOSED] CONSENT AGREEMENT

428855.1

PDF created with pdfFactory trial version www.pdffactory.com